# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEONARD WAYNE WESSON,

        Defendant-Appellant.

UNPUBLISHED
August 2, 2016

No. 326389
Wayne Circuit Court
LC No. 14-003866-FH

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendant, Leonard Wayne Wesson, appeals as of right his convictions, following a jury trial, of larceny from a person, MCL 750.357, and larceny in a building, MCL 750.360.[1] The trial court sentenced Wesson as a habitual offender, third offense, MCL 769.10, to serve 24 months to 15 years in prison for his larceny from a person conviction and 24 months to 6 years in prison for his larceny in a building conviction. We reverse Wesson's larceny from a person conviction, affirm Wesson's larceny in a building conviction, and remand.

## I. FACTUAL BACKGROUND

The victim, Dennis Omoto, testified that he took $1,000 in a money clip with him into the Greektown Casino in Detroit. After Omoto won $500 playing video poker, he gave a "fist bump" to the man next to him and offered to buy him a beer. Omoto described his purchase:

> Well, I took out my money clip to pay cash to the bartender. She gave me some change. I believe she gave me change for a twenty. And the gentleman moved closer to me on my left side, and he was kind of marveling over my good fortune, and we were talking, and I put the change back in my money clip and was

---

[1] Wesson also pleaded guilty to possession of less than 25 grams of methadone, MCL 333.7403(2)(a)(v), and possession of analogues, MCL 333.7403(2)(b)(ii), for which the trial court sentenced him to serve five years' probation and 44 days in jail, respectively.

-1-

intending to put it in my pocket. And apparently I missed my pocket, and it dropped on the floor.

Omoto believed that the money clip held about $525 dollars. When he realized it was missing, he contacted casino representatives.

A security camera recording shows Omoto speaking with a man in a white button-down shirt. Initially, an empty stool separates Omoto and the man, then the man leans and appears to congratulate Omoto. Omoto extends money across his machine to pay for a purchase and, while speaking to the man in the white shirt, reaches toward the rear of his pants. About five seconds later, the man in the white shirt moves the stool that stood between the men and begins speaking with Omoto at a very close distance. A couple seconds later, the video shows Wesson stop and look as he walks past. While Omoto and the man in the white shirt converse, Wesson reaches under the stool that the man in the white shirt moved, picks something up, and continues on his way. Wesson admitted that he saw the money on the floor, picked it up, and continued walking even though he knew he should have turned it over. Wesson also testified that he thought the money was his because he found it.

The jury found Wesson guilty of larceny from a person and larceny in a building. Wesson now appeals, contending in pertinent part that he did not take the money from Omoto's immediate presence.

## II. STANDARD OF REVIEW

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. at 9.

## III. ANALYSIS

Wesson contends that the evidence in this case was insufficient to support his conviction of larceny from a person because he did not take the money clip "from the person of" Omoto, since the clip was not in Omoto's immediate presence when there was a second man intervening in the space between Wesson and Omoto. We agree.

Under MCL 750.357, a person commits larceny from a person "by stealing from the person of another . . . ." In *People v Smith-Anthony*, 494 Mich 669; 837 NW2d 415 (2013), the Michigan Supreme Court defined the phrase "from the person of another" to mean "from the possession and immediate presence of the victim." *Id*. at 681. Our Supreme Court stated that for a possession to be in the victim's immediate presence, there must be no intervening space between the object and the victim:

> [T]he immediate presence test can only be satisfied if the property was in immediate proximity to the victim at the time of the taking. In other words, the

common-law meaning of "immediate presence" in the larceny-from-the-person context is consistent with the plain meaning of the word "immediate," which means "having no object or space intervening, nearest or next." [*Id.* at 688 (quotation marks and citation omitted).]

In this case, the surveillance video on which the prosecution relies shows that there is a man in a white button-down shirt standing between Omoto and the stool under which Wesson reached to retrieve the money clip. While the space involved is relatively small, there was another person and object intervening between the victim and the defendant in this case. Accordingly, Wesson did not take the clip from Omoto's immediate presence, and we must conclude that the prosecution did not prove all the essential elements of larceny from a person. Given our resolution of this issue, we need not resolve the remainder of Wesson's issues on appeal.

We reverse Wesson's conviction of larceny from a person and affirm his conviction of larceny in a building. Because the trial court calculated Wesson's sentence on the basis of his larceny from a person conviction, we must remand for resentencing.[2] We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell

---

[2] See *People v Jackson*, 487 Mich 783, 801-802; 790 NW2d 340 (2010) (holding that remand for resentencing is required when a sentence for a concurrent offense relied on information related to a vacated conviction).